VANCHERIE *v.* SIPERLY

[No. 367, September Term, 1965.]

368

*Decided July 7, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*John W. Hardwicke* for appellant.

*Charles H. Reed, Jr.,* and *Brodnax Cameron, Jr.,* for appellee.

HORNEY, J., delivered the opinion of the Court.

In this tort action for damages arising out of an assault and battery by a nightstick-swinging restaurateur on a beer-drinking sailor, the questions on appeal relate to (i) the motion for a

directed verdict and (ii) the award of exemplary damages. The appeal is from the final judgment entered against James C. Vancherie (defendant) in favor of Norville Siperly (plaintiff) following a jury verdict for compensatory and exemplary damages and the denial of a motion for a new trial. The defendant-appellant also presents a question (iii) concerning a second motion for a new trial filed after the lower court had heard and dismissed a claim of jury tampering.

The incident occurred on a day that the plaintiff (stationed at Bainbridge) was off duty. The sailor had spent the afternoon drinking beer at several Havre de Grace taverns. Shortly after four o'clock that afternoon he went to the restaurant owned by the defendant and ordered scrambled eggs, toast and a glass of milk. Although there is some contradiction in the testimony from this point on, there was sufficient evidence from which the jury could reasonably have found the following additional facts.

After the plaintiff had eaten a portion of the eggs he noticed they had a peculiar taste and complained to the waitress that "they just don't taste right" and that he thought "there might be a rotten one in there." When he received little satisfaction from the waitress he asked to talk to the manager, and the waitress went for the defendant who was sitting in a booth in the restaurant. The plaintiff restated his complaint to the defendant and after a brief discussion was told by the defendant that neither he nor his money were wanted. The defendant then left and went to his home nearby. After the defendant had gone, the plaintiff finished his milk, got up, walked to the cash register and asked for his bill. The waitress refused to take his money and when he insisted on paying she telephoned the defendant and informed him of the situation.

The defendant returned to the restaurant armed with a nightstick he had gotten out of his automobile and, "hollering" at the plaintiff to get out, struck him on the head with the nightstick and attempted to strike him a second time but was prevented from doing so by the plaintiff. On leaving the restaurant the plaintiff was first treated at the Havre de Grace hospital for a scalp laceration and then went to the Bainbridge Naval Training Center where he received further treatment.

Subsequently, when the plaintiff filed suit against the defendant alleging that he had been beaten without reason or justification and claiming compensatory and exemplary damages for the injuries he had suffered, the defendant entered a general issue plea and also a plea of justification. At the trial, the motion of the defendant for a directed verdict having been denied, the jury returned a verdict for the plaintiff of $1000 compensatory damages and $4000 exemplary damages. And when the motion for a new trial was denied and final judgment was entered for $5000, the defendant appealed.

About a month later, the trial judge notified the defendant that he had received information indicating that possibly someone had interfered with the deliberations of the jury and that a hearing would be held to explore the matter. But following the investigation, at which the statements of several persons were taken and recorded, the judge announced that he was satisfied that there had been no interference. However, the defendant, who apparently was not satisfied that the jury had not been tampered with, filed another motion for a new trial and subsequently requested that the record of the investigation be transcribed in order that he might evaluate it, but the request was denied.

(i)

In support of his contention that a directed verdict should have been granted in his favor at the close of the whole case, the defendant, pointing out the difference between the ages and physical abilities of himself (who was sixty-five years old and partially disabled) and the plaintiff (who was a six-foot tall, young and healthy sailor), argues that the force he used to remove the plaintiff from his restaurant was not unreasonable. The defendant further argues that this case is governed by *Maddran v. Mullendore*, 206 Md. 291, 111 A. 2d 608 (1955). We agree that the rules laid down in *Maddran* are applicable but in this case they compel the opposite result from that which the defendant advances.

In the *Maddran* case, this Court, at p. 300, adopted the rule set forth in the Restatement, Torts § 77 (1934). The Restatement, however, has since been revised and now provides: [1]

---

1. The reporter's notes with regard to § 77 of the Restatement

"An actor is privileged to use reasonable force, not intended or likely to cause death or serious bodily harm, to prevent or terminate another's intrusion upon the actor's lands or chattels, if (a) the intrusion is not privileged or the other intentionally or negligently causes the actor to believe that it is not privileged, and (b) the actor reasonably believes that the intrusion can be prevented or terminated only by the force used, and (c) the actor has first requested the other to desist, and the other has disregarded the request, or the actor reasonably believes that a request will be useless, or that substantial harm will be done before it can be made." Restatement (Second), Torts § 77 (1965).

The Court also relied on § 82 of the Restatement of Torts which reads in part:[2]

"If the actor applies a force to * * * another which is in excess of that which is privileged, (a) the actor is liable for so much of the force * * * as is excessive. * * *." Restatement (Second), Torts § 82 (1965).

Even if it is assumed, without deciding, that the plaintiff had become a trespasser or an intruder at the time he was attacked by the defendant, it is apparent that the jury, in applying the instructions[3] of the trial court as to the law, could have accepted any one of several different versions of what happened in reaching the conclusion that the defendant was liable for the damages assessed. It is not necessary to decide whether each version (which could have been accepted) involved

of Torts (Second) state: "This section (77) has been changed from the first Restatement by condensing it to conform to the briefer style of later sections. No change in substance is intended." Restatement (Second), Torts § 77 appendix (1966).

2. The wording of § 82 of the second Restatement of Torts as set out above is the same as the original Restatement.

3. Although not given verbatim, the instructions substantially stated the rules of law set forth in Maddran v. Mullendore, 206 Md. 291, and the second Restatement of the Law of Torts, and apparently there were no exceptions to the charges.

a jury question: it is enough that any one of them evidenced a question for the jury.

In discussing whether the issue of excessive force was a jury question in the *Maddran* case, it was said (at pp. 300, 301 of 206 Md.) :

> "* * *. We fully agree that the question whether the amount of force used by a property owner in protecting or regaining his property was excessive is generally a question of fact to be determined by the jury in view of all the facts and circumstances in each particular case. Hence, a jury, in determining whether the force used by the property owner was excessive, can take into consideration the comparative sizes, physical conditions, and ages of the parties. * * *. As the kind and degree of force proper to remove a trespasser depends largely upon the conduct of the trespasser, the question whether the force was suitable and moderate in any particular case must generally be left to the jury. * * *.
>
> "Where, however, the evidence is clear and unmistakable that the force used by the property owner in defending his property was not excessive, the trial court should so rule as a matter of law."

In the instant case the evidence was not clear and unmistakable that the force used by the defendant was not excessive. Likewise the evidence was not clear and unmistakable that the force was reasonable. Although there was evidence that the plaintiff was rude and obnoxious and that "he made a pass" at the defendant before the defendant struck him, there was also evidence that the plaintiff conducted himself in a courteous manner, that there were several able-bodied men available who would have assisted the defendant in ejecting the plaintiff in a less forceful manner, and that the police could have been quickly summoned from the police station only two blocks from the restaurant.

(ii)

The second question concerns different phases of the contention regarding the award of exemplary damages. We shall

consider them, not in the order presented on appeal, but in their logical sequence.

The contention of the defendant that the declaration was such as to preclude a finding of exemplary damages is without merit. While it was not expressly declared that the assault and battery was committed in a wanton or malicious manner, it was alleged that the attack was made "without reason or justification" and that as a result thereof the plaintiff "suffered great mental and physical pain and injuries, both temporary and permanent, which required emergency medical treatment and extended medical care," for which the plaintiff, in addition to damages generally, specifically claimed "exemplary damages." To us, these allegations, coupled with the claim for punitive damages, had the effect of alleging that the beating was malicious and wanton and were sufficient to justify an award of exemplary damages. See *Groh v. South,* 121 Md. 639, 89 Atl. 321 (1913) and *Sloan v. Edwards,* 61 Md. 89 (1883). And see generally 6 Am. Jur. 2d, *Assault and Battery,* § 201; 22 Am. Jur. 2d, *Damages* § 249; 25 C.J.S. *Damages* § 133; Prosser, *Torts* pp. 9-11 (3rd ed.); 1 Poe, *Pleading and Practice* § 415 (Tiffany's Ed.) at p. 402. In any event, the defendant did not demur to the declaration. And although he objected to proof of his financial worth, he did not object to such of the evidence as tended to show malice or wantonness. Nor did he object to that part of the instructions defining the term exemplary damages which the trial court informed the jury had been "asked" for by the plaintiff.

With regard to the next contention that it was error to submit the question of exemplary damages to the jury, it is clear that where personal injuries have been inflicted maliciously or wantonly, the jury, in addition to compensatory damages, may award such exemplary or punitive damages as the circumstances of the case warrant. *Galusca v. Dodd,* 189 Md. 666, 57 A. 2d 313 (1948); *Dennis v. Baltimore Transit Co.,* 189 Md. 610, 56 A. 2d 813 (1948); *Baltimore Transit Co. v. Faulkner,* 179 Md. 598, 20 A. 2d 485 (1941). The argument that there were no grounds for an award of exemplary damages because, as the defendant put it, "malice is a necessary element in inflicting exemplary damages and no malice was shown in the instant

case" overlooks the fact that a finding by the jury that the injury had been wantonly inflicted would also justify the award of exemplary damages. There was, moreover, sufficient evidence to support the finding that the attack was maliciously made, for malice as used in this connection "signifies that the defendant was influenced by hatred and spite and that he indulged in deliberate and wilful mischief to injure the plaintiff." *Dennis v. Baltimore Transit Co., supra* (at p. 616 of 189 Md.).

While a jury should not be allowed to speculate that there was sufficient ground for awarding exemplary damages, where in reality there was no ground at all for such an award, *Baltimore Transit Co. v. Faulkner, supra* (at p. 602 of 179 Md.), the existence of such malice as will justify the infliction of exemplary damages is generally a question of fact. *Heinze v. Murphy,* 180 Md. 423, 431, 24 A. 2d 917 (1942). In the case at bar the defendant himself testified that he was capable and able to defend himself, that he was neither "yellow" nor a "panty waist" and that he returned to the restaurant armed with a nightstick because he wanted the plaintiff out of the restaurant and that he did not care what the plaintiff had to say. He further testified that he "take[s] care of first things first, as they come, and * * * [the plaintiff] was the first thing to be taken care of." These statements, along with the other evidence, were sufficient to justify the award of exemplary damages.

The last contention as to exemplary damages is that even if the evidence was sufficient to take the question of such damages to the jury, the trial judge erred in failing to instruct the jury that it should take into consideration the provocative acts and words of the plaintiff in mitigation of the exemplary damages it might assess against the defendant. While it is true that the jury should have been so instructed, since there was evidence of provocation on the part of the plaintiff, the record indicates that the defendant made no objection to the omission of such an instruction from the charge to the jury at the time and in the manner required by Rule 554 d. This final phase of the contentions concerning exemplary damages, as was the first, is therefore not reviewable. Rule 554 e.

## (iii)

The third question, concerning the filing of a second motion for a new trial following the determination by the trial judge that there had been no interference with the deliberations of the jury, is not before us on appeal. The time had elapsed for the filing of another motion for a new trial. Even more to the point, an appeal having been entered, the lower court lacked jurisdiction to take any further action in the case with respect to the subject matter of the appeal until the receipt of the mandate from this Court after the appeal had been heard and decided. This is so because the perfection of the appeal brought the subject matter of the appeal within the exclusive jurisdiction of this Court and suspended the authority of the lower court over it during the pendency of the appeal. See *State v. Jacobs*, 242 Md. 538, 219 A. 2d 836 (1966) ; *Gilliam v. Moog Industries*, 239 Md. 107, 210 A. 2d 390 (1965) ; *Bullock v. Director*, 231 Md. 629, 190 A. 2d 789 (1963). The defendant could, of course, have dismissed the appeal and moved for a revision of the judgment pursuant to Rule 625. But this would not likely have brought about a new trial in the absence of sufficient proof to satisfy the trial court that the deliberations of the jury had in fact been illicitly disturbed.

For the reasons stated, the judgment must be affirmed.

*Judgment affirmed; appellant to pay the costs.*