# H & R BLOCK, INC. ET AL. *v.* GLENN B. TESTERMAN ET UX.

[No. 174, September Term, 1974.]

*Decided May 26, 1975.*

*Motion for rehearing filed June 25, 1975; denied June 27, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*William F. Abell, Jr.,* with whom were *Heeney, McAuliffe & Rowan* on the brief, for appellants.

*Walter H. Madden,* with whom were *Thomas D. Murphy* and *Michael Francis O'Connor* on the brief, for appellees.

LEVINE, J., delivered the opinion of the Court.

We granted a Writ of Certiorari in this case to consider the ultimate question whether one may recover punitive damages, and may include mental anguish as an element of compensatory damages, in an action for negligent preparation of income tax returns. A decision by the Circuit Court for Montgomery County (Miller, J.) sitting without a jury, rejecting these damage claims, was reversed by the Court of Special Appeals in *Testerman v. H & R Block, Inc.,* 22 Md. App. 320, 324 A. 2d 145 (1974).

In their declaration, appellees, Glenn B. Testerman and Grace I. Testerman (jointly referred to as the Testermans), sued appellant, H & R Block, Inc. (Block), for damages in both tort and contract. The Testermans alleged that Block "negligently, wantonly, maliciously and intentionally"

prepared their 1967 and 1968 federal income tax returns incorrectly. In consequence thereof, they claimed compensatory damages of $50,000, including an allegation of mental anguish, and punitive damages of $100,000.

In the latter part of 1967, the Testermans commenced to operate a service station in Mt. Airy as a sole proprietorship. With a view towards the preparation of their 1967 tax return, they visited the Block office in Frederick in March 1968. They brought with them a cardboard box containing various materials including cash register tapes, "profit control books," cancelled checks, check stubs and "parts bills." They had been induced to patronize Block by an advertisement which boasted "that they are tax experts." Upon entering the establishment, they met Joseph B. Dunn (Dunn), the operator of that particular franchise location, and now the other appellant in this appeal. After leafing through the profit control book and the check stubs for some 45 minutes to an hour, Dunn announced to the Testermans that they had "lost money" in 1967. In no mood to disagree, the Testermans acquiesced and returned in four days to pick up their completed returns, which they signed and forwarded to the Internal Revenue Service (IRS).

Understandably satisfied with their prior result, and mindful of the Block advertisement that "they will pay the penalty and interest if they make a mistake, and [that] they are tax experts," the Testermans returned a year later for the preparation of their 1968 tax return.[1] On that occasion, they were referred by the receptionist to another employee — a Mrs. Weisberg. As they had done a year earlier, they handed her a cardboard box containing materials for the year 1968. In a manner reminiscent of their initial visit, she examined the profit control record book for approximately one hour, and then informed the Testermans that they had "lost money" in 1968. By this time, the Testermans were overcome by curiosity and asked how it was possible for

---

1. As the Court of Special Appeals noted, Block employees "refer to themselves as tax consultants. They are told never to refer to themselves as tax experts, but if someone else does, do not worry." Testerman v. H & R Block, Inc., *supra*, 22 Md. App. at 329.

them to have "lost money" when, in fact, they had made an adequate livelihood and had drawn cash from the business for their personal use. Mrs. Weisberg replied that "everybody loses money the first couple of years they are in business"; and that the money transferred from their business account to their personal checking account "was hard earned money that was not taxable."

In addition to preparing the 1968 return, Mrs. Weisberg amended the 1965 Testerman return by utilizing the 1968 loss as a "carryback," thereby producing a refund of taxes for the earlier year. This proved to be more than the IRS could endure. One of its agents visited the Testermans in January 1970 to audit their books. They released the same records to him that they had previously delivered to Block. Two weeks later, the agent returned and charged ". . . you put $10,000 in your pocket . . . ." Mr. Testerman made no effort to conceal his disbelief; he replied "you are out of your goddamn mind."

Undaunted, the IRS agent submitted a report to the Intelligence Division in which he recommended prosecution because he had concluded that the understatement of income was deliberate and had been made with intent to file a false return. Recognizing the Testermans' limited education and apparent honesty, however, the Intelligence Division recommended that there be no prosecution.

The Testermans confronted the Block employees with the records and "the figures" which they had received from the IRS agent. When it became apparent that they could not obtain a satisfactory solution from Block, Dunn eventually suggested that they consult an attorney. They not only followed this advice, but also conferred with a certified public accountant. Ultimately, they engaged another accountant who, as had the first, advised them that the IRS was correct and Block was not. Upon the recommendation of the two accountants, the Testermans paid the delinquent taxes, interest and penalties.

Both accountants employed by the Testermans appeared as expert witnesses at the trial. They testified, in essence,

40

that the Block personnel who prepared the returns were woefully inadequate — in terms of education and experience — for the tasks which they had undertaken. The errors Block had made bordered on the absurd. It had understated income for both years by deducting sums "off the top" (from gross income) which the Testermans had drawn periodically from the business for personal use. Also, Block omitted from gross income the amounts paid for expenses from cash receipts at the service station, which, of course, had not been reflected in bank deposits. The records which the Testermans had delivered to Block, however, had accurately reflected all of these transactions.

After the IRS account had been settled, the Testermans and their accountant met with Dunn at his office to discuss possible reimbursement by Block. Dunn insisted — as he subsequently did at the trial — that he had made no errors, and that the Block office in Baltimore had therefore instructed him not to pay the penalties and interest. Tempers flared; Dunn then told the Testermans "to get the hell out" and called them a "bunch of trouble makers."

At the trial, Mrs. Weisberg explained that Block merely prepares tax returns and does not audit the client's books. Since it must accept the figures furnished by the client, it can guarantee only the accuracy of its own computations. Despite the IRS audit and the consequences which had ensued, Mrs. Weisberg and Dunn insisted that the returns, having been based on the information received from the Testermans, were prepared correctly. They acknowledged that pursuant to the instructions issued by Block, fees are not refunded. If errors result in client dissatisfaction, a "gift certificate" is to be issued for the following year.

Early in the trial, the Testermans proferred to show, as part of their compensatory damages, that they had suffered mental anguish because of the "wrongful acts" committed by appellees. The trial court ruled that such evidence was inadmissible because the Testermans had not suffered a physical injury. At the conclusion of the Testermans' case-in-chief, the court ruled, as a matter of law, that they

could not recover punitive damages, since they had established that Block was guilty of mere negligence; such conduct, said the court, "would not entitle them to punitive damages." Those two rulings set the stage for the successive appeals which have followed.

At the conclusion of all the evidence, the trial court entered a judgment for the Testermans under the negligence count in the sum of $690.65 for the interest and penalties assessed against them, together with the legal and accounting costs they had been required to incur. An appeal by Block from that judgment was not prosecuted to a conclusion.

On appeal, the Court of Special Appeals reversed, holding that both punitive damages and mental anguish, the latter as an element of compensatory relief, were appropriate to this case. With regard to punitive damages, the court, relying on *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 297 A. 2d 721 (1972), stated:

> ". . . Whatever *presumed* or *constructive* malice may be in tort law, the most recent cases leave no doubt that malice as a *sine qua non* for punitive damages must be shown to be actual, but that the required showing may be made not only by direct proof, but with equal effect by rational inference from other facts directly proved. . . . (emphasis in original).
>
> "What this boils down to, we think, is that when tortious conduct is accompanied by either a deliberate intention to violate the rights of others, or by a *reckless disregard of the rights of others, it is committed with actual malice,* or its legal equivalent, and punitive damages may be assessed against the wrongdoer." 22 Md. App. at 348-49 (emphasis added).

The court then concluded:

> ". . . when Block held [Dunn and Weisberg] out as qualified tax consultants without limitation,

placing them in a position to undertake to prepare returns they were not competent to prepare, that policy or practice was in reckless disregard of the rights of others, and would support an award of punitive damages." 22 Md. App. at 351.

With regard to mental anguish, the Court of Special Appeals, after noting that exceptions to the "impact rule" exist in Maryland, reasoned that such damages were recoverable in this case, saying:

"More analogous with the case before us are those tort cases brought for libel, slander, malicious prosecution and the like, which ordinarily involve no physical impact, and in which mental anguish is often the most substantial element of compensatory damage." 22 Md. App. at 352.

### (1)

Merely a representative sampling of the Maryland cases in which punitive damages have been allowed establishes beyond any question that malice is an absolute prerequisite to their recovery. *Summit Loans, Inc. v. Pecola,* 265 Md. 43, 288 A. 2d 114 (1972) (invasion of privacy); *Drug Fair v. Smith,* 263 Md. 341, 283 A. 2d 392 (1971) (assault and battery, false imprisonment and malicious prosecution); *Rinaldi v. Tana,* 252 Md. 544, 250 A. 2d 533 (1969) (tortious interference with contract); *Vancherie v. Siperly,* 243 Md. 366, 221 A. 2d 356 (1966) (assault and battery); *McClung-Logan v. Thomas,* 226 Md. 136, 172 A. 2d 494 (1961) (trover and conversion); *Nichols v. Meyer,* 139 Md. 450, 115 A. 786 (1921) (trespass *de bonis asportatis*); *Sloan v. Edwards,* 61 Md. 89 (1883) (assault and battery).

Conversely, punitive damages have been denied where malice has not been proven. *Wolf v. Levitt & Sons,* 267 Md. 623, 627, 298 A. 2d 374 (1973); *Siegman v. Equitable Trust Co.,* 267 Md. 309, 314, 297 A. 2d 758 (1972); *Associates Discount v. Hillary,* 262 Md. 570, 580, 278 A. 2d 592 (1971); *Damazo v. Wahby,* 259 Md. 627, 638, 270 A. 2d 814 (1970); *P., B. & W. R. v. Green,* 110 Md. 32, 71 A. 986 (1909). Each of

these cases relied on the principle first enunciated in the seminal case of *P., W. & B. R.R. Co. v. Hoeflich*, 62 Md. 300, 307 (1884), in which our predecessors said:

> ". . . The force and deliberation with which the wrongful act is done, are not necessarily the tests by which the question of punitive damages is to be determined. On the contrary, to entitle one to such damages there must be an element of fraud, or malice, or evil intent, or oppression entering into and forming part of the wrongful act. It is in such cases as these that exemplary or punitive damages are awarded as a punishment for the *evil motive or intent* with which the act is done, and as an example or warning to others. . . ." (emphasis added).

A corollary to this rule is that "where the act, although wrongful in itself, is committed in the honest assertion of a supposed right — or in the discharge of duty, or without any evil or bad intention, there is no ground on which such damages can be awarded." *P., W. & B. R.R. Co. v. Hoeflich, supra,* 62 Md. at 307; *Accord, Siegman v. Equitable Trust Co., supra,* 267 Md. at 314; *Associates Discount v. Hillary, supra,* 262 Md. at 580; *Dennis v. Baltimore Transit Co.,* 189 Md. 610, 617, 56 A. 2d 813 (1948).

Much of the discussion in the recent decisions on this question has dealt with whether the malice must be actual — sometimes called express — or can be its legal equivalent, frequently labeled implied malice. *See, e.g., Smith v. Gray Concrete Pipe Co., supra; Drug Fair v. Smith, supra; St. Paul at Chase v. Mfrs. Life Insur.,* 262 Md. 192, 238-39, 278 A. 2d 12 (1971), *cert. denied,* 404 U. S. 857 (1971); *Conklin v. Schillinger,* 255 Md. 50, 71, 257 A. 2d 187 (1969). Actual or express malice — at least in this context — has been characterized as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff. *Siegman v. Equitable Trust*

*Co., supra,* 267 Md. at 314; *Drug Fair v. Smith, supra,* 263 Md. at 352.

Although the doctrine of punitive damages has been associated traditionally with the field of torts, the award of such damages has been sought not infrequently in contract-related cases. While it is well settled in this state that punitive damages cannot be awarded in a pure action for breach of contract, *Siegman v. Equitable Trust Co., supra,* 267 Md. at 313; *St. Paul at Chase v. Mfrs. Life Insur., supra,* 262 Md. at 236, such damages are recoverable in tort actions arising out of contractual relationships. In such situations, however, actual malice has been required. In *Knickerbocker Co. v. Gardiner Co.,* 107 Md. 556, 569-70, 69 A. 405 (1908), the landmark Maryland case in this area, the Court stated:

> ". . . We do not mean to say there may not be [punitive] damages in cases of this character, for if, for example, there was evidence tending to show that the defendant had caused the contract to be broken for the *sole purpose, and with the deliberate intention of wrongfully injuring* the plaintiff, exemplary damages might be recovered, but when the object was merely to benefit itself, although the plaintiff would be thereby injured, there would be no more reason for allowing such damages than there would be in a suit by one party to a contract against the other for breach of it. . . ." (emphasis added).

This rule has been followed consistently, *Siegman v. Equitable Trust Co., supra,* 267 Md. at 314; *Daugherty v. Kessler,* 264 Md. 281, 284, 286 A. 2d 95 (1972); *St. Paul at Chase v. Mfrs. Life Insur., supra,* 262 Md. at 238; *Damazo v. Wahby, supra,* 259 Md. at 639. In *Damazo v. Wahby, supra,* we said:

> "The Maryland rule is that malice in the sense of deliberate and improper violation of a known right, that is, absence of legal justification, will support

an action and permit recovery of compensatory damages for deprivation of known contractual rights, but that actual malice must be shown to support punitive damages. . . ." 259 Md. at 638.

In light of these principles, therefore, it is not surprising that there appear to be only two Maryland cases in which punitive damages have been allowed for a tort arising out of a contractual relationship. *Rinaldi v. Tana; McClung-Logan v. Thomas*, both *supra*. In describing the actual malice which formed the basis of the punitive damage award in *Rinaldi*, we said in *Damazo*:

". . . There, although the per curiam opinion does not reveal it, there was testimony in the record that the interferer had *expressed animosity* towards his sister with whose contract he interfered and *had threatened and indicated a determined purpose to harm her.* Judge Moore, the trial judge, found this brought the case within the holding of the *Knickerbocker* case on punitive damages." 259 Md. at 639 (emphasis added).

Similarly, actual malice was found in *McClung-Logan*, where the evil and spiteful motive was thus described:

". . . It was a reasonable and proper inference that appellant became provoked with appellee's numerous requests that the defective condition of the tractor be corrected and that it determined to put a stop to the complaints by seizing the tractor and forcing the appellee to sign a release of all claims that he might have. The validity of this inference was clear in the light of appellant's insistence that appellee release all claims as a condition for appellant's acceptance of the redemption payment it had demanded of appellee and which it had stated it would accept. . . ." 226 Md. at 149.

Thus, actual malice was established in both cases; the

conduct in each instance was marked by an evil motive or intent.

Despite the general tendency of the cases to require actual malice as a prerequisite to punitive damages, it is nonetheless recognized that situations may arise in which such malice can be legally inferred, *i.e.*, cases in which the legal equivalent of actual malice may suffice. In this regard, we stated in *Conklin v. Schillinger, supra,* 255 Md. at 71:

> ". . . The difficulty in the Maryland cases arises in regard to factual situations in which there is no evidence of *actual intent* to injure or of *actual malice* toward the injured person, but in which the defendant's conduct is of such an extraordinary character as possibly to be the legal equivalent of such actual intent or actual malice, sometimes described as 'wanton,' 'reckless disregard of the rights of others,' and the like. . . ." (emphasis in original).

The only case in which punitive damages apparently have been allowed in the absence of actual malice is *Smith v. Gray Concrete Pipe Co., supra,* heavily relied upon here by appellees, and below by the Court of Special Appeals. There, we said:

> "We regard a '*wanton or reckless disregard for human life*' in the operation of a *motor vehicle,* with the known dangers and risks attendant to such conduct, as the legal equivalent of malice. It is a standard which, although stopping just short of wilful or intentional injury, contemplates conduct which is of an extraordinary or outrageous character. . . . We hold that it is the standard by which claims for exemplary damages *arising out of motor vehicle operation* are to be tested." 267 Md. at 168 (emphasis added).

Without attempting to delineate here the circumstances under which the legal equivalent of actual malice may support the recovery of punitive damages, we need only hold

that the rule enunciated in *Smith v. Gray Concrete Pipe Co.,*
*supra,* — that a "wanton or reckless disregard for human
life in the operation of a motor vehicle" is the legal
equivalent of such malice — cannot be extended to this case.
By its own terms, that particular holding, which the Court
of Special Appeals incorrectly applied to this case, is
carefully circumscribed in two important respects. It is
confined to a wanton or reckless disregard for *human life,*
and to the operation of a *motor vehicle.* In any event, as we
have indicated, where the tort is one arising out of a
contractual relationship, actual malice is a prerequisite to
the recovery of punitive damages.

We turn then to the facts of this case. We noted early on
that although the trial court rested the judgment for
compensatory damages on a finding of negligence, the
Testermans had sued alternatively for breach of contract.
Indeed, the trial court left no doubt that had it been denied
any other option, it would have bottomed the award on the
contract theory. The upshot is that the tort committed here,
negligent preparation of the tax returns, arose out of a
contractual relationship. Consequently, actual malice is a
prerequisite to the recovery of punitive damages in this case.

Plainly, there was no actual malice here. As the Court of
Special Appeals observed, the injury occurred because the
Block employees "lacked the training, experience, or
competence to understand the requirements of the business
tax returns which they prepared." 22 Md. App. at 350. In
short, as found by the trial court, they were guilty of simple
negligence — the failure to exercise reasonable care. They
harbored no ill will toward appellees; nor were they
motivated by an evil or rancorous motive influenced by hate
or spite. Neither did they act with the sole purpose or the
deliberate intention of wrongfully injuring them. The worst
that can be said of appellants' motives is that they were
actuated by a desire to realize a commercial gain — hardly
enough, as we have indicated, to constitute actual malice.
Although Block was demonstrably negligent in hiring
inexperienced employees, and in holding them out to the

public as qualified consultants, this did not amount to actual malice.

Like *St. Paul at Chase v. Mfrs. Life Insur., supra,* this case involves no more than a negligent breach of contract. As we intimated there under comparable circumstances, when the object is merely to benefit the wrongdoer, although the plaintiff might be thereby injured, there are no grounds to support an award of punitive damages.

(2)

As we stated earlier, the trial court denied recovery for mental anguish on the ground that there had been no accompanying physical injury. The Court of Special Appeals, however, held that mental anguish properly should have been considered as an element of compensatory damages on the theory that the wrong committed here was analogous to such intentional torts as "libel, slander, malicious prosecution and the like . . . ." We disagree.

The law is clear in Maryland that physical impact is not a prerequisite to mental anguish damages. As we said in *Bowman v. Williams,* 164 Md. 397, 404, 165 A. 182 (1933):

> ". . . In Maryland the decision[s] . . . have settled the principle that a plaintiff can sustain an action for damages for nervous shock or injury caused, without physical impact, by fright arising directly from defendant's negligent act or omission, and resulting in some *clearly apparent and substantial physical injury,* as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state." (emphasis added).

The cases have adhered to the *Bowman* rule, however, in requiring that there be clearly apparent and substantial physical injury, to guard against the possibility of feigned claims, *Mahnke v. Moore,* 197 Md. 61, 77 A. 2d 923 (1951); *Green v. Shoemaker,* 111 Md. 69, 73 A. 688 (1909). It is in consequence of this line of cases that the subsequent Maryland decisions have generally denied compensation for

mental anguish resulting from damage to property. The rule was stated in *Zeigler v. F Street Corp.*, 248 Md. 223, 225-26, 235 A. 2d 703 (1967):

> "Under Maryland law it is not necessary that there be physical impact for a plaintiff to recover for mental suffering and emotional distress. . . . However, ordinarily there can be no recovery for mental suffering, resulting from damage done to property. *State, Use of Aronoff et al. v. Baltimore Transit Co.*, [197 Md. 528, 80 A. 2d 13 (1951)]. As was stated in 25 C.J.S., *Damages* 68, page 826, ' * * * it is generally held that under ordinary circumstances there can be no recovery for mental anguish suffered by plaintiff in connection with an injury to his property. Where, however, the act occasioning the injury to the property is inspired by *fraud, malice, or like motives,* mental suffering is a proper element of damage. It has been held that an injury to property alone will not support a recovery for fright occasioned by such injury.' . . ." (emphasis added).

As we have already indicated in our discussion of punitive damages, the present case is not one in which the wrongful act was inspired by "fraud, malice or like motives." Moreover, as we have clearly observed, this was a case of negligence — not one of intentional tort. Hence, the analogy to such actions as libel, slander and malicious prosecution is misplaced.

Since the negligent conduct here was not accompanied by physical injury, the trial judge ruled properly in denying damages for mental anguish.

> *Judgment of the Court of Special Appeals reversed; remanded to that Court with instructions to affirm the judgment of the Circuit Court for Montgomery County; appellees to pay costs.*