### R.E. LINDER STEEL ERECTION CO., INC.

v.

### WEDEMEYER, CERNIK, CORRUBIA, INC.; Becker, Becker & Pannell, Inc.

### Charles E. DiPAULA, to his own use and to the use of State Accident Fund; and Stephanie C. DiPaula; and Charles E. DiPaula

v.

### BECKER, BECKER & PANNELL, INC.; Wedemeyer, Cernik, Corrubia, Inc.

Civ. Nos. HM80–2772, HM82–2836.

United States District Court, D. Maryland.

April 30, 1984.

Thomas C. Beach, III; Clapp, Somerville, Honemann & Beach, Baltimore, Md., for plaintiff Linder Steel Erection Co., Inc.

Francis J. Ford; Michael P. Chervenak; Ford & O'Neill, Rockville, Md., for third-party defendant and cross-defendant Linder Steel Erection Co., Inc.

James K. Archibald; Venable, Baetjer & Howard, Baltimore, Md., Craig R. Mariger; Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, for defendant Becker, Becker & Pannell, Inc.

H. Emslie Parks; Michael C. Warlow; Brian S. Goodman; Wright & Parks, of Baltimore, Md., for defendant Wedemeyer, Cernik, Corrubia, Inc.

James R. Eyler; Douglas B. Riley; Miles & Stockbridge, Baltimore, Md., for third-party defendant Charles H. Tompkins Co.

Richard H. Lerch; Joseph I. Huesman; Lerch & Huesman, Baltimore, Md., for plaintiffs DiPaula.

Douglas G. Worrall; Donald J. McCartney; Smith, Somerville & Case, Baltimore, Md., for third-party defendant Montague-Betts Company, Inc.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

Currently pending before the court are two pretrial motions in the above-captioned consolidated cases. They are: (1) defendants Becker, Becker & Pannell, Inc.'s ("Becker") and Wedemeyer, Cernik & Corrunia, Inc.'s ("Wedemeyer") motion for partial summary judgment on plaintiffs' request for punitive damages; and (2) defendants Becker's and Wedemeyer's motion for a bifurcated trial. The motions have been fully briefed by all parties. The court finds that no hearing is required. Local Rule 6.

*Motion for Partial Summary Judgment*

Defendants have filed a motion for summary judgment seeking dismissal of the punitive damages claims in plaintiff Linder Steel Erection Company, Inc.'s ("Linder") Second Amended Complaint, paragraphs 26A through 26N, and plaintiffs Charles and Stephanie DiPaula's Amended Complaint, paragraphs 8A through 8N. The allegations supporting plaintiffs' punitive damages claims are nearly identical.

In their supporting memoranda, defendants argue that the allegations in the plaintiffs' complaints are not sufficient to support a claim for punitive damages. They note that those allegations concern actions defendants allegedly took both before and after the collapse of the Annapolis Mall. They submit that actions taken after the collapse are not probative of defendants' state of mind prior to the collapse and hence are not admissible on the issue of

punitive damages. They further argue that the torts at issue in this case arose out of the construction contracts between various parties and that this fact requires that plaintiffs show actual, and not merely implied, malice as a precondition for recovery of punitive damages. Finally, they submit that, regardless of the appropriate standard, the plaintiffs cannot produce sufficient evidence to justify an award of punitive damages.

In their responsive memorandum, plaintiffs argue a number of general principles which they believe preclude summary judgment in this case. They further submit that their allegations are sufficient to withstand a motion to dismiss. They argue that their cases are "pure tort" actions, not torts arising out of a contract, and that they need only show implied malice to justify an award of punitive damages. They have not cited the court to any specific evidence supporting their punitive damages allegations.

■ As an initial matter, the court believes that plaintiffs' allegations are sufficiently specific to withstand a motion to dismiss. *See e.g.*, M. Minzer, J. Nates, C. Kimball & D. Axelrod, *Damages in Tort Actions* (1983) § 40–61. The issue before the court, however, is whether plaintiffs will be able to put on sufficient admissible evidence in support of those allegations.

a. Post Collapse Conduct

■ Evidence of acts committed after the tortious conduct for which damages are claimed, here the collapse of the Annapolis Mall, are admissible on the issue of punitive damages only if the later acts tend to show the defendant's disposition, intention, or motive in the commission of the tortious act. *Byers v. Santiam Ford, Inc.*, 281 Or. 411, 574 P.2d 1122 (1978); *see* F.R.Civ.P. 404(b). Defendants cite a number of cases from other jurisdictions which hold that conduct constituting a "cover-up" committed after the allegedly tortious act is not probative of the defendant's state of mind when the tort was committed, and therefore, is not admissible to show entitlement

to punitive damages. *See Simmons v. Southern Pacific Transportation Co.*, 62 Cal.App.3d 341, 133 Rptr. 42, 58 (1976) and cases cited therein. In partial rebuttal to defendants' arguments, plaintiffs cite a number of Maryland cases which stand for the proposition that defendant's subsequent conduct is admissible to show a "consciousness of guilt." *See Sewell v. State*, 34 Md.App. 691, 694, 368 A.2d 1111 (1977); *Meyer v. McDonnell*, 40 Md.App. 524, 525, 533, 392 A.2d 1129 (1978).

The court believes that the cases cited by plaintiff do not meet defendants' argument head on. The Maryland cases cited by plaintiff are factually distinguishable from the case at bar. Furthermore, the fact that the Maryland courts admit subsequent acts evidence to show consciousness of guilt does not preclude the adoption, if the question were squarely presented, of the rule suggested by the defendants. The absence of a definitive Maryland rule is also not an impediment to the court in this case, as the Federal Rules of Evidence and not the Maryland Rules are controlling.

Rule 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The rule indicates that defendants' allegedly willful, wanton and reckless acts committed after the collapse (Linder Complaint ¶ 26 H–N; DiPaula Complaint ¶ 8 H–N) are not admissible to show that defendants' pre-collapse conduct was similarly willful, wanton, and reckless. Even if plaintiffs are able to set forth a permissible basis for admission, the Advisory Committee Notes suggest that the court must then weigh the admission of the evidence under the "probative value versus prejudice" test of Rule 403. The court believes that the balancing test mandated by Rule 403 is better made at time of trial when specific evidence is

before it rather than in the abstract prior to trial. Accordingly, the court will entertain at time of trial any objections defense counsel may have to the admission of "cover-up" evidence.

### b. Actual or Implied Malice

Defendants next argue that the plaintiffs, in order to be entitled to punitive damages, must show actual malice, and not merely implied malice because the tort at issue in this case is not a "pure tort" but a tort arising out of a contract. *H & R Block, Inc. v. Testerman*, 275 Md. 36, 338 A.2d 48 (1975). Plaintiffs dispute the applicability of the actual malice rule because neither plaintiff was a party to any contract with the defendants.

■■■ The *Testerman* case has created some confusion over the definition of a tort arising out of a contract. One commentator has suggested that *Testerman* and its progeny establish a three-pronged rule. A tort arises out of a contract where: (1) a contract preexists the tort; (2) the contract is essential to the tort; and (3) the plaintiff could sue on alternative theories of tort or contract. J. McCadden, "Punitive Damages in Tort Cases in Maryland," 6 U.Balt. L.Rev. 203, 217 (1977). The contracts at issue in this case are Wedemeyer's contract with May Centers of Annapolis, Inc. ("Owner") and Becker's contract with Wedemeyer. As plaintiffs have observed, neither Linder nor DiPaula were parties to these contracts. In order for a tort to arise out of a contract, however, both parties to the tort action need not be parties to the contract. *See e.g., Daugherty v. Kessler*, 264 Md. 281, 286 A.2d 95 (1972); *Knickerbocker Co. v. Gardiner Co.*, 107 Md. 556, 69 A. 405 (1908) (tortious inducement to breach contract).

The court believes that any duty defendants owed to plaintiffs arose out of the contracts. *See Coffey v. Derby Steel Co.*, 291 Md. 241, 259, 434 A.2d 564 (1981); *Kreiger v. J.E. Greiner Co.*, 282 Md. 50, 56 (1978). Thus, the first two requirements set forth by Professor McCadden have been met in this case. It is the third re-

quirement, plaintiff's ability to sue on alternative contract and tort theories, which is somewhat difficult to apply here. In *General Motors Corp. v. Piskor*, 281 Md. 627, 637, 381 A.2d 16 (1977), the court observed that cases involving an allegedly negligent performance of contract obligations have generally been considered to be torts arising out of contract "to the extent that the tort action was accompanied by a separate cause of action sounding in contract." *See Testerman*, 275 Md. at 47, 338 A.2d 48. In the instant case, neither plaintiff has a cause of action in contract.

■■ McCadden derives his third requirement from *Associates Discount Corp. v. Hillary*, 262 Md. 570, 278 A.2d 592 (1971). In that case, plaintiffs were neighbors of the Brauns, a couple who had purchased an automobile under an installment plan. When the Brauns failed to pay, defendant came to repossess the car which was then in plaintiffs' driveway. Because plaintiffs' car was blocking the car to be repossessed, defendant moved plaintiffs' car without their permission. Plaintiffs then sued defendant for trespass. McCadden argues that this case represents a pure tort situation even though the tort would not have occurred in the absence of the Brauns' installment contract. The court believes the *Associates* case is factually distinguishable from the case at bar and that McCadden's third requirement should not apply to this type of case. The court finds that this case involves "[allegedly] tortious conduct and [a] contract [that] were so intertwined that one could not be viewed in isolation from the other." *Piskor*, 281 Md. at 637, 381 A.2d 16. Accordingly, the plaintiffs will be required to show actual malice in order to prevail on their punitive damages claims.

### C. The Evidence

In support of their assertion that plaintiffs cannot meet the actual malice standard, defendants have presented to the court what they believe to be the plaintiffs' best case. Plaintiffs have not specifically responded with contrary or additional evi-

dence. Instead, plaintiffs submit that where, as here, expert testimony and opinion evidence is necessary to resolve issues of fact, summary judgment is inappropriate. Plaintiffs also assert that the jury should be able to determine whether defendants' conduct was sufficiently wrongful to entitle them to punitive damages.

■ The court believes that in a case such as this one, where the proof will consist almost exclusively of expert opinion, that summary judgment is indeed inappropriate. The commentators also suggest that summary judgment is usually inappropriate in cases requiring a determination of defendant's state of mind. *See* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* (1983), sec. 2730. They observe that "cases involving malice necessarily call defendant's state of mind into question and summary judgment often will be refused when that issue is raised." *Id.; see e.g., Greear v. Loving,* 538 F.2d 578 (4th Cir.1976). The court believes that the credibility of witnesses and their demeanor will be significant in this action. It will, therefore, deny the motion for partial summary judgment on the punitive damages claims as inappropriate.

*Motion for Bifurcated Trial*

Defendants have also moved to bifurcate the liability and damages aspects of the trial pursuant to Rule 42(b). They assert that bifurcation will promote efficiency. They point out that trial of the damages issues will be rendered unnecessary if the jury returns a verdict for the defendants. Of course, this potential time savings is true in all bifurcated cases. Defendants also indicate that the damages issues will be vigorously contested and will probably consume one week of trial time. Defendants assert that they will be prejudiced if the trial is not bifurcated, particularly where the plaintiff is seeking punitive damages. They submit that the consolidation of Linder's economic injury case with DiPaula's personal injury claims will also generate prejudice if the trial is not conducted in two phases.

Plaintiffs dispute defendants' assertion that efficiency demands a bifurcated trial. Plaintiffs believe the damages phase of the trial will be relatively short. The DiPaulas indicate that they will call only four witnesses. Linder proffers that it will call some of the same witnesses for both liability and damages. Plaintiffs do not specifically answer defendants' prejudice arguments.

■ Bifurcation of trials is intended to further convenience, avoid delay and prejudice, and to serve the ends of justice. It is appropriate only when the court believes that separation will achieve the purposes of the rule. 9 C. Wright & A. Miller, *Federal Practice and Procedure* (1971), sec. 2388. The court believes that bifurcation is not appropriate in this case. The liability issues in this matter are much more complex, and will require comparatively more trial time, than the damages questions. Linder has indicated that it intends to use some of the same witnesses on both issues. DiPaula will also have at least one witness testifying on both matters. In light of these facts, the court believes that any savings in time and expense which might result from a bifurcation is wholly speculative. The court also believes that any prejudice which defendants may encounter as a result of the punitive damages claims and claims for two different types of injuries can be cured with instructions to the jury. Accordingly, in its discretion, the court will deny defendants' motion for bifurcation.

For the foregoing reasons, it is this 30th day of April 1984, by the United States District Court for the District of Maryland,

ORDERED:

(1) that defendants' motion for partial summary judgment be, and the same hereby is, *Denied;*

(2) that defendants' motion for bifurcation be, and the same hereby is, *Denied;* and

(3) that the Clerk of the Court mail copies of this memorandum and order to the parties.