Craig STEPHENS, et ux., Plaintiffs,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant.

Civ. A. No. HAR 92–2730.

United States District Court,
D. Maryland.

April 30, 1993.

Peter A. Goldsmith, Wheatley & Wollesen, Annapolis, MD, for plaintiffs.

Daniel L. Shea, Brault, Graham, Scott & Brault, Rockville, MD, Martin A. Durkin, Philadelphia, PA, for defendant.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Modern American legal practice, at least in the federal courts, eschews the rigid, hyper-technical pleading requirements historically imposed on litigants. However, because "it is well settled in Maryland ... that punitive damages are prohibited in a *pure* action for breach of contract," *Schaefer v. Miller*, 322 Md. 297, 299, 587 A.2d 491 (1991) (citations omitted, emphasis added), a significant monetary incentive exists for parties to fight over the label attached to particular causes of action. In the instant matter, the parties dispute whether an insurance carrier's allegedly unreasonable withholding of payments constitutes a tort or merely a violation of the insurance agreement. While the practical ramification of assessing the proper nomenclature involves the availability of punitive damages, the Court resists the temptation to allow the damages tail to wag a dog independently in search of its home in either the house of tort or contract.

In consideration for premiums paid, Craig and Dorothy Stephens, husband and wife, were insured under a homeowners' insurance policy issued by Liberty Mutual Fire Insurance Company ("Liberty Mutual") when a fire allegedly caused extensive damage to their home and personal property. (Complaint ¶ 13). In response to Liberty Mutual's refusal to extend coverage, the Stephens initiated the above-captioned action alleging both breach of contract and breach of fiduciary duty.[1] In addition to compensatory damages, because they contend that Liberty Mutual "intentionally and deliberately" violated

---

1. The Stephens initially filed their two count Complaint in the Circuit Court for Anne Arundel County. On September 28, 1992, Liberty Mutu-al, invoking this Court's diversity jurisdiction, removed the case to this federal forum.

the fiduciary duty it purportedly owed them "with evil motive, intent to injure and ill will," (Complaint ¶ 29), the Stephens seek punitive damages.

Presently before the Court is Liberty Mutual's Motion for Partial Summary Judgment. Summary judgment will be granted when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In support of its motion, Liberty Mutual argues that in first-party disputes between an insured and his or her insurance carrier, Maryland law recognizes only claims for breach of contract, for which only compensatory damages are recoverable. *See Yuen v. American Republic Ins. Co.*, 786 F.Supp. 531, 533 (D.Md.1992). According to Liberty Mutual, the Stephens' second count, along with its prayer for punitive damages, must be dismissed.

### I.

While the Stephens go to great lengths attempting to establish that Liberty Mutual, *qua* insurer, owed them a fiduciary duty,[2] the crux of their tort claim is that "Liberty Mutual breached [sic] its fiduciary duties ... to act promptly on [their] claim and to pay [them] for their claim." (Complaint ¶ 27). In their Memorandum, the Stephens describe this alleged fiduciary obligation as "the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy." *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 485, 510 P.2d 1032, 1037 (1973). A cursory response to the Stephens' allegation is that "Maryland does not recognize a tort action against an insurer for bad faith failure to pay a first party insurance claim." *Johnson v. Federal Kemper Ins. Co.*, 74 Md.App. 243, 246, 536 A.2d 1211, *cert. denied*, 313 Md. 8, 542 A.2d 844 (1988).

A less conclusory response involves an inquiry into why Maryland has refused, and in all likelihood, will continue to refuse, to recognize such a cause of action. In *Johnson*, Maryland's authoritative opinion on the issue, the Court of Special Appeals incorporated by reference the reasoning of a 1983 federal district court decision, *Caruso v. Republic Insurance Co.*, 558 F.Supp. 430 (D.Md.1983), as its *ratio decidendi*. Like the case at bar, *Caruso* involved a suit under a homeowners' insurance policy for damage to the plaintiff's home caused by fire. The *Caruso* court predicted that Maryland's appellate courts would not recognize an independent tort claim in first-party insurance disputes because to do so would disrupt Maryland's scheme for awarding punitive damages.[3]

When *Caruso* was decided, a myriad of states other than Maryland had adopted a first-party insurance tort based on an insurer's bad faith delay or failure to pay a valid claim for coverage. Distinguishing the duty from one imposed by contract, those states explained that an insurer's obligation is not

---

2. The Complaint contends:
   a. "Liberty Mutual had a fiduciary and confidential relationship with the Stephens. The Stephens relied on Liberty Mutual to provide insurance coverage for their home." ¶ 18.
   b. "Liberty Mutual had a duty to act for and give advice to the Stephens." ¶ 19.
   c. "Liberty Mutual attempted to and did gain the confidence and reliance of the Stephens." ¶ 20.
   d. "Liberty Mutual had a duty to give the Stephens a speedy and fair decision on their claim. Liberty Mutual had a duty to pay the Stephens' claim unless it had something more than a circumstantial suspicion that the Stephens' claim was improper." ¶ 21.

3. In 1983, Maryland courts applied competing standards for the recovery of punitive damages

based on the underlying cause of action. For non-intentional torts, plaintiffs could recover punitive damages upon a showing of "implied malice," defined as "conduct of an extraordinary nature characterized by a wanton or reckless disregard for the rights of others." *Schaefer, supra* 322 Md. at 300, 587 A.2d 491 (citations omitted). In contrast, for "torts arising out of a contractual relationship," plaintiffs seeking exemplary damages were required to establish "actual malice," defined as "the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Id.* Then, as now, punitive damages were not available in breach of contract actions.

mandated by the terms of the policy itself, [but rather] it is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. When in so doing, it fails to deal fairly and in good faith with its insured, by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.... Accordingly, when the insurer unreasonably and in and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.

*Gruenberg v. Aetna Ins. Co., supra,* 108 Cal. Rptr. at 484–85, 510 P.2d at 1036–37.[4]

After surveying the common law tort duties recognized in other states, the *Caruso* court declared:

While this Court is convinced of the soundness of a rule imposing liability on an insurer for the consequences of its failure to settle claims promptly, it is also convinced ... that the Maryland appellate courts would not recognize a separate tort based on such allegations. This is because the Court of Appeals of Maryland has adopted a substantial body of law relating to those hybrid causes of action having elements of both tort and contract.... These are the so-called 'torts arising out of contractual relationships.' Such torts frequently bear close resemblance to actions for pure breach of contract in which punitive damages are not recoverable. Nevertheless, torts of this genre often involve conduct of the most opprobrious kind which society might well seek to punish and deter by means of exemplary damages.... Where the tort is one arising out of a contractual relationship, actual malice is a prerequisite to the recovery of punitive damages.

*Caruso,* 558 F.Supp. at 434, *citing H & R Block v. Testerman,* 275 Md. 36, 338 A.2d 48 (1975); *Wedeman v. City Chevrolet Co.,* 278 Md. 524, 366 A.2d 7 (1976); *General Motors*

*v. Piskor,* 281 Md. 627, 381 A.2d 16 (1977). The *Caruso* court added that "[w]hile the decision here with respect to first party claims may seem harsh, it does not preclude insureds from seeking punitive damages when insurers refuse or delay payment; it merely elevates the standard of recovery." *Caruso,* 558 F.Supp. at 435.

In 1992, the Court of Appeals expressly abandoned the framework of competing standards generated by "the 'arising out of contract distinction' ... for purposes of allowing an award of punitive damages in tort cases." *Owens–Illinois v. Zenobia,* 325 Md. 420, 453, 601 A.2d 633 (1992). In its place, *Zenobia* requires that actual malice be demonstrated before punitive damages can be awarded in any non-intentional tort claim. Had *Zenobia* been decided prior to *Caruso* and *Johnson,* their expressed justifications for refusing to recognize an independent tort duty in first-party insurance disputes would not have existed.

In the exercise of its diversity jurisdiction, and in light of *Zenobia,* this Court faces the identical legal conundrum which confronted the *Caruso* court: "will Maryland's appellate courts recognize a cause of action in tort based on an insurance company's bad faith claim settlement practices?" However, in contrast to the court in *Caruso,* this Court believes it unwise to allow the availability or unavailability of punitive damages to distract it from its primary responsibility to determine whether an insurance company owes its insureds a tort duty above and beyond the duties described in the insurance agreement. If such a tort duty does exist, it arises primarily out of the relationship between insurance carriers and their premium-paying customers, not because such a tort duty is the precursor of a punitive damages award.

## II.

In the context of a dispute between an insurance carrier and its insured, the relationship between the parties does not warrant the imposition of tort duties. Unlike a situation in which an insurance company un-

---

4. More recently, states other than Maryland have reaffirmed the existence of such an independent tort duty. *Staff Builders Inc. v. Armstrong,* 37 Ohio St.3d 298, 525 N.E.2d 783 (Ohio 1988); *Viles v. Security National Ins. Co.,* 788 S.W.2d 566 (Tex.1990).

dertakes to settle a third party claim against the insured, when the insured retains all rights to control the litigation necessary to enforce a claim, no potential or actual conflict of interest exists and therefore, the law need not impose an extra-contractual fiduciary duty. *See Johnson, supra* 74 Md.App. at 247, 536 A.2d 1211; *Caruso, supra* 558 F.Supp. at 435; *Fireman's Fund Ins. Co. v. Continental Ins. Co.,* 308 Md. 315, 318, 519 A.2d 202 (1987), *citing, State Farm v. White,* 248 Md. 324, 236 A.2d 269 (1967), and *Sweeten v. Nat'l Mutual Ins. Co.,* 233 Md. 52, 194 A.2d 817 (1963).

Moreover, the implied covenant of good faith and fair dealing, which Maryland recognizes in certain contracts, does not create any duties outside the realm of contract. The breach of a contractual duty, "absent a duty or obligation imposed by law independent of the contract itself, is not enough to sustain an action sounding in tort." *Heckrotte v. Riddle,* 224 Md. 591, 595, 168 A.2d 879 (1961). "To hold in cases such as the present one that a contractual relationship itself provides the duty of care necessary for the maintenance of a [tort] claim would ... [establish] the contract ... [as] an 'independent duty imposed by law.'" *Flow Industries Inc. v. Fields Constr. Co.,* 683 F.Supp. 527, 530 (D.Md.1988). Given that Maryland does not recognize a breach of the covenant of good faith and fair dealing as an independent claim for breach of contract, it is not likely to construe the implied covenant as the progenitor of tort duties. Instead, Maryland is more likely "to confine actions between an insured and his or her insurer to the realm of contract law, rather than letting such actions expand to tort proportions." *Yuen, supra* 786 F.Supp. at 533.

Maryland's adoption of a statutory Insurance Code, Art. 48A *et seq.,* and in particular, its prohibition against "Unfair claim settlement practices," Art. 48A, § 230A, reinforces the conclusion that its appellate courts will not resort to the common law of tort to accomplish the noble goals of compensation and deterrence. The General Assembly has prescribed an administrative remedy for those who feel aggrieved by their insurance carrier's practices, § 230A(e) and (f), and has

provided: "Nothing contained in this section is intended to provide or deprive any private right or cause of action." § 230A(f)(2). Thus, any judicially provided relief depends on the existence of an independent legal duty which in Maryland, sounds only in contract.

### III.

While the *Caruso* opinion, which, through *Johnson,* has become controlling in Maryland, refused to recognize a separate, independent first-party insurance tort, it clearly anticipated that upon a showing of actual malice, an insured could recover punitive damages based on his or her insurance carrier's bad faith refusal to extend coverage. The court's conviction that punitive damages were available rested with its characterization of the cause of action as a "tort arising out of a contractual relationship." *Caruso,* 558 F.Supp. at 434. This characterization, perhaps, was *Caruso'*s fatal error. A review of Maryland cases demonstrates that disputes between an insurer and insured do not belong in the category of hybrid contract/tort claims. Instead, they are quintessential disagreements over the application and enforcement of a contract.

The cases in which the "tort arising out of a contractual relationship" has been recognized involved facts where "the tort found its source in the contract without which the wrong would not have been committed." *Wedeman, supra* 278 Md. at 529, 366 A.2d 7.

There must be a direct nexus between the tortious act and performance or breach of the terms and conditions of the parties' underlying the contract.... The common thread is that the tortious conduct and the contract [are] so intertwined that one [cannot] be viewed in isolation from the other.... [In some cases] the tort consist[s] of nothing more than an allegedly negligent performance of contract obligations.... In one form or another, then, the tort [arises] directly from performance or breach of the contract.

*Schaefer, supra,* 322 Md. at 310, 587 A.2d 491, *citing Piskor, supra* 281 Md. at 637, 381 A.2d 16. While such verbal formulae argu-

ably apply to every breach of contract claim,[5] the cases applying the doctrine invariably involved traditional or "pure" torts where the tortfeasor and the victim happen to share a contractual relationship.[6] The Stephens do not contend that Liberty Mutual committed any independent tort outside of the alleged non-performance of its contractual obligations; therefore, the hybrid category of "torts arising out of a contractual relationship," is inapposite.[7]

### Conclusion

Count Two of the Stephens' Complaint alleges a cause of action which, for the foregoing reasons, is not, and probably will not be, recognized in Maryland. While it is not inconceivable that traditional contract remedies, without the assistance of punitive damages, may be ineffective in deterring insurance companies from riding roughshod over their policy holders, if Maryland wishes to allow the recovery of exemplary damages, resort must be made to a legislative branch not unfamiliar with the insurance industry. The existence of an independent tort duty which, upon a showing of actual malice, could support an award of punitive damages, simply cannot be gleaned from Maryland's common law.

In accordance with this Memorandum Opinion, it will be so ordered.

### ORDER

This thirtieth (30th) day of April, 1993, it IS, by the United States District Court for the District of Maryland, hereby ORDERED:

That Defendant Liberty Mutual Fire Insurance Company's Motion for Partial Summary Judgment BE, and the same hereby IS, GRANTED.

---

**5.** The Stephens' contention that Liberty Mutual unreasonably withheld claim payments undoubtedly "arises out of a contractual relationship"; all breach of contract claims, by definition, do. Stating the tautology, however, does not magically transform their claim into a hybrid cause of action.

**6.** *See Piskor, supra* 281 Md. 627, 381 A.2d 16 (tort claim for assault and false imprisonment based on management's detention of the plaintiff-employee after it suspected that the plaintiff was attempting to steal company property); *Testerman, supra* 275 Md. 36, 338 A.2d 48 (plaintiff, who had retained Block for preparation of a tax return, alleged that Block was demonstrably negligent in hiring inexperienced employees, and in holding them out to the public as qualified consultants); *Vancherie v. Siperly,* 243 Md. 366, 221 A.2d 356 (1966) (action for assault and battery

brought by a business proprietor against a customer arising out of a prior contractual relationship); *McClung–Logan Equipment Co. v. Thomas,* 226 Md. 136, 172 A.2d 494 (1961) (counterclaim by conditional buyer against conditional seller for wrongful conversion); *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 122 A.2d 457 (1956) (customer initiated false imprisonment and malicious prosecution action against a store); *Dennis v. Baltimore Transit Co.,* 189 Md. 610, 56 A.2d 813 (1948) (action for false arrest initiated by a passenger against a common carrier); *Mertens v. Mueller,* 119 Md. 525, 87 A. 501 (1913) (claim for malicious prosecution where the tortious conduct arose out of an employment contract between the parties).

**7.** For this reason, The Court will not permit the Stephens to amend their Complaint in order to seek punitive damages under Count One.