Anthony Frank SIBLEY, M.D.,
Plaintiff–Appellant,

v.

LUTHERAN HOSPITAL OF MARYLAND, INC.; Duleep Pradhan, M.D., individually, and in his official capacity as Chairman, Department of Surgery, Lutheran Hospital of Maryland, Inc., Defendants–Appellees.

No. 88–2802.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 1, 1988.

Decided March 31, 1989.

Lynn Suzanne Spradley (Paulson, Nace & Norwind, on brief), for plaintiff-appellant.

Daniel J. Moore (Semmes, Bowen & Semmes, on brief), for defendants-appellees.

Before WINTER, MURNAGHAN and SPROUSE, Circuit Judges.

PER CURIAM:

The district court granted summary judgment for Lutheran Hospital of Maryland, Inc. (Hospital) and Dr. Duleep Pradhan in this action filed against them by Dr. Anthony F. Sibley for defamation, negligent withholding and termination of hospital privileges, and intentional deprivation of hospital privileges. Summary judgment was granted for Dr. Pradhan, but denied to the Hospital with respect to plaintiff's tortious breach of contract cause of action. Pursuant to Fed.R.Civ.P. 54(b), the grant of summary judgment was made final.

Plaintiff appeals and we affirm.

Plaintiff's alleged causes of action all arose out of derogatory remarks made about him in the evaluation of his qualifications following his application for hospital privileges, delay on the part of the Hospital in taking final action on his application, and failure on the part of the Hospital to follow its own bylaws in denying him certain procedural rights.

In a concise opinion, the district court correctly determined that Dr. Pradhan was entitled to summary judgment on all of plaintiff's alleged causes of action, as was the Hospital, except with regard to plaintiff's claim of breach of contract or tortious breach of contract against the Hospital. See Sibley v. Lutheran Hospital of Maryland, 709 F.Supp. 657 (D.Md.1989). We are altogether satisfied with the opinion of the district court. We adopt it as our own

statement as to why we affirm the judgment of the district court.

AFFIRMED.

MURNAGHAN, Circuit Judge, concurring:

Although I concur in the result reached by the majority, and acknowledge the thoroughness and quality of the opinion of the lower court, I feel the issues raised by this case are of tremendous importance and deserve further discussion.

In the medical doctors' intense interest in securing hospital privileges, which are terribly important if not altogether vital to their future professional success, some are turning to actions for defamation as a means to deter unfavorable comments on their activity. While they are entitled not to be maligned, they must accept that the public has a developed interest in the safe and efficient conduct of hospitals. Medical administrators must not be unduly constrained in accumulating professional comments on how safely and efficiently the hospital's affairs are being conducted.

It is with those thoughts in mind that I address Dr. Anthony Frank Sibley's suit for defamation against the Lutheran Hospital of Maryland and a member of its medical staff.

On August 6, 1984, Sibley, a resident of Washington, D.C., applied to the Lutheran Hospital of Maryland, located in Baltimore City, for full courtesy staff privileges in urology and full courtesy staff privileges, as well as temporary privileges, in emergency medicine (emergency room privileges). Sibley had graduated from medical school, served a one-year rotating internship and then completed a four-year residency in urology. He had already secured a temporary appointment in Lutheran Hospital's emergency room. At that time, Lutheran's division of urology, headed by Dr. Leslie Abramowitz, was one of several medical units within the department of surgery, headed by Dr. Duleep Pradhan. The division of emergency services fell under the department of ambulatory services, headed by Dr. Charles Shubin. The actual emergency room was managed and staffed

on a contractual basis by the professional corporation of Dr. Reed Winston.[1]

Sibley's application contained a release stating in part:

> I hereby release from liability all representatives of the hospital and its medical staff for their acts performed in good faith and without malice in connection with evaluating my application and my credentials and qualifications.

An applicant for full privileges in emergency medicine was required to possess certain qualifications; *inter alia*, a full program of training in surgery, medicine, family practice or emergency medicine, or three years experience in emergency room service. A "full program of training" is defined by Lutheran as the completion of a five-year residency program in one of the areas of specialization required for emergency room service.

Applications for full privileges at Lutheran were granted or denied by the Medical Executive Committee upon the recommendation of the Credentials Committee. Temporary privileges, on the other hand, did not need to be screened by the Credentials Committee nor meet all the required qualifications for full privileges.[2] Applications for temporary privileges are approved by the department head and the chief medical affairs officer of the Hospital.

On October 25, 1984, Sibley met with Abramowitz concerning his application for privileges in urology. Abramowitz voiced his concern over Sibley's residence. Given the distance between Baltimore and Washington, Abramowitz was concerned about Sibley's ability to deal with problems and emergencies on a timely basis.[3] Sibley responded that if the situation called for it,

such as a patient recovering from surgery, he could use as a temporary shelter the home of a friend. Abramowitz did not tell him the proposal was unsatisfactory or recommend he change his residence to get privileges. Abramowitz orally briefed Pradhan as to the interview shortly thereafter.

Abramowitz reported to Pradhan in a letter dated June 13, 1985 that he regarded Sibley as well-qualified, but noted his concern over Sibley's residence.[4] On July 22, 1985, Sibley informed Pradhan that he had acquired a Baltimore residence. On August 1, 1985, Pradhan sought further information, particularly as to whether the residence was permanent, which Sibley provided. At the subsequent meeting of the Credentials Committee, held on September 12, 1985, Sibley's application for privileges in urology was considered and approved.

Sibley's application for privileges in emergency medicine was considered at the same Credentials Committee meeting of September 12, 1985. The Committee determined Sibley did not meet the prescribed qualifications for full courtesy privileges in emergency medicine. At the meeting Pradhan reported two incidents of questionable patient care by Sibley. Pradhan made no representation to those attending the meeting as to the correctness of the information he was reporting.

First, Dr. Juan Arrisueno, head of the Hospital's surgical intensive care unit, had reported to Pradhan that a patient had appeared at the emergency room complaining of acute shortness of breath. Sibley inappropriately initiated intermittent positive pulse breathing therapy with the patient. It was subsequently discovered that the patient had a tension pneumothorax.

---

1. In accordance with Hospital standards and procedures, doctors who worked in the emergency room were hired and paid by Winston, but were required to have "privileges" at the Hospital.

2. Temporary privileges required only a medical degree, a license to practice, and malpractice insurance.

3. Evidently the practice of urology involves a good deal of surgery and consequential post-surgical problems. Lutheran did not have an attending physician for urological cases, so doc-

tors were expected to conduct their own follow-up.

4. Pradhan did not request a written recommendation from Abramowitz until the spring of 1985. Sibley did not receive any information as to the reason for the delay until he was mailed, on July 19, 1985, an information copy of a letter from Pradhan to the Chairman of the Credentials Committee indicating that Pradhan was awaiting information from Sibley relative to moving his residence.

A chest tube was then inserted and the patient was resuscitated. Pradhan reported the incident to Dr. Rafael Aybar, then Director of Medical Affairs at the Hospital, but took no further action.

The second incident, reported by Dr. Ashok Agrawal, involved a patient presented to the emergency room with a stab wound to the chest.[5] No X-ray was taken prior to the stitching of the chest wound. An X-ray was taken afterward, revealing fluid in the chest cavity necessitating evacuation.

The Credentials Committee recommended unfavorably on Sibley's application for emergency room privileges, which negative recommendation was adopted by the Medical Executive Committee. The Credentials Committee also voted to rescind Sibley's temporary emergency room privileges, which the Medical Executive Committee also approved.

Sibley was notified of the decision by a letter dated November 1, 1985. The notice was not sent by certified mail, did not state reasons for the Medical Executive Committee's action and did not advise Sibley of his right of appeal, all steps required by the Hospital bylaws.

On July 14, 1986, Sibley brought an action against Lutheran Hospital and Pradhan in the United States District Court for the District of Maryland,[6] seeking compensatory and punitive damages on four counts: defamation, negligent withholding and termination of hospital privileges, intentional deprivation of hospital privileges, and tortious breach of contract.

In count I, Sibley alleged Pradhan's statements to the Credentials Committee concerning the two incidents of patient mishandling were defamatory and that, because Pradhan acted with malice, he had lost any qualified privilege provided by statute or common law. In count II, Sibley alleged that the Hospital negligently violated its own bylaws by its manner of processing Sibley's application for privileges in urology and of terminating Sibley's temporary privileges in its emergency room. In count III, Sibley alleged Pradhan and the Hospital intentionally withheld the urology privileges and intentionally violated the Hospital bylaws by the manner in which the temporary emergency room privileges were revoked. In count IV, Sibley alleged the violation of the Hospital bylaws resulting in a breach of contract, and that the defendants' "acts and omissions were tortious in nature."

Following discovery the defendants moved for summary judgment on all counts. Accepting that the bylaws were an implied contract, the district court granted summary judgment to the defendants on all counts except the breach of contract claim against the Hospital.[7] The court also granted summary judgment denying Sibley's claims for punitive damages arising from the Hospital's breach of contract. Sibley filed a motion under Fed.R.Civ.P. 54(b), which the court granted. This appeal followed.

Sibley contends the trial court erred in granting summary judgment to the defendants Lutheran and Pradhan. An appellate court normally reviews a grant of summary judgment *de novo*, applying the same standard as the district court. *Felty v.*

---

5. Agrawal later told Sibley it was Arrisueno who reported the incident to Pradhan.

6. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). It is interesting that Sibley claims diversity for jurisdiction purposes, but alleges he established a residence in Baltimore to demonstrate the unreasonableness of the delay in processing his application. His communications with the Hospital indicate he retained his property in Washington, but to what extent the record is unclear.

7. The district court did not grant summary judgment on the breach of contract claim against

the hospital, believing Sibley had established a clear case of breach of the hospital bylaws. The court, however, restricted Sibley to nominal damages, as he failed to introduce any evidence to show that his situation would have been different if the hospital had complied with its bylaws, subject to proof that he turned down other positions which were offered to him because he reasonably believed that Lutheran might reverse its decision if it were to afford him a hearing in compliance with its bylaws. *See Christhilf v. Annapolis Emergency Hospital Association, Inc.,* 552 F.2d 1070 (4th Cir.1977).

*Graves–Humphreys Co.,* 818 F.2d 1126, 1127–28 (4th Cir.1987).

The defendants, in moving for summary judgment, have the burden of showing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). The burden may be met by the use of "affidavits, exhibits, depositions and other discovery materials." *Barwick,* 736 F.2d at 958. Once a defendant has met her burden, the plaintiff must go forward and produce sufficient evidence to support his contentions. "A mere scintilla of evidence is not enough to support a fact issue; there must be evidence on which a jury might rely." *Barwick,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theaters, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd,* 388 F.2d 987 (4th Cir.1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). As the Advisory Committee notes to Fed.R.Civ.P. 56 state:

> The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.[8]

The standard for granting summary judgment is akin to that of granting a directed verdict:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.... [T]he judge must ask him-

self not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (emphasis in original).[9]

In *Felty* we found that "[r]ecent cases of the Supreme Court have made clear the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from going to trial." *Id.* at 1128 (quoting *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553). Here, the district court concluded that, although the case presented a few isolated disputed facts, they did not result in evidence sufficient to constitute factual support for Sibley's claims.

Initially, Sibley contends that the district court erred in granting summary judgment in favor of Pradhan and the Hospital on the defamation claim. Sibley charges that Pradhan made actionable defamatory statements by relating to the Credentials Committee the two instances of patient mishandling reported to him.

---

**8.** As Judge Winter stated in *Bland v. Norfolk and Southern Railroad Company,* 406 F.2d 863, 866 (4th Cir.1969):

> While a day in court may be a constitutional necessity when there are disputed questions of fact, the function of a motion for summary judgment is to smoke out if there is any case, *i.e.,* any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition.

**9.** *Celotex* states at 327, 106 S.Ct. at 2555:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Fed-

eral Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed. Rule Civ.P. 1; see Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984).... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Pradhan's statements, however, are conditionally privileged. Section 14–601(f) of the Maryland Health Occupations Code provides, in pertinent part:

(f) *Immunity from civil liability.*—A person who acts in good faith and within the scope of jurisdiction of a medical review committee is not civilly liable for any action as a member of the medical review committee or for giving information to, participating in, or contributing to the function of the medical review committee.

In addition, § 14–603(c) provides:

(c) *Immunity from civil liability.*—A person described in subsection (b) of this section is not civilly liable for giving information to any hospital, hospital medical staff, related institution, or other health care facility, professional society, medical school, or professional licensing board, if the person:

(1) Gives the information in good faith and with the intention of aiding in the evaluation of the qualifications, fitness, or character of a physician; and

(2) Does not represent as true any matter that the person does not reasonably believe to be true.[10]

Absent proof of bad faith or malicious intent, it is clear that the two sections protect Pradhan. Furthermore, Pradhan enjoys the benefit of a conditional privilege at common law. Maryland recognizes that communications arising in an employment context or by common interest in the subject matter are conditionally privileged. *See, e.g., General Motors Corp. v. Piskor,* 277 Md. 165, 352 A.2d 810 (1976); *Hanrahan v. Kelly,* 269 Md. 21, 305 A.2d 151 (1973); *Exxon Corp. v. Schoene,* 67 Md. App. 412, 508 A.2d 142 (1986). The privilege is particularly apt in the present context, since the common law privileges arose by way of recognition of the desirable public benefit of encouraging uninhibited communication where a public or private duty may lie. *See Simon v. Robinson,* 221 Md. 200, 206, 154 A.2d 911, 915 (1959).

Pradhan had a reasonably perceived duty to communicate the information he possessed to the Credentials Committee. *Hanrahan,* 269 Md. at 31, 305 A.2d at 157. If a conditional privilege should *ever* operate, indeed if there is one instance where society should encourage uninhibited communication, it is in the review of the competency of medical professionals. The Maryland legislature has recognized the need in §§ 14–601(f) and 14–603(c). It is no less apparent under a common law analysis.

Once a conditional privilege has been established (whether by statute or common law) Maryland indicates it must be overcome by a showing of *New York Times* malice.[11] *See Marchesi v. Franchino,* 283 Md. 131, 139, 387 A.2d 1129, 1133 (1978) (adopting the *New York Times* standard of malice to defeat claims of a conditional privilege defense in cases of private defamation). Thus, Sibley must establish Pradhan acted with knowledge that what he was stating to the Credentials Committee was false, or with a reckless disregard for the truth to recover on his defamation claim. *See New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964).

Sibley must also establish such malice by clear and convincing evidence. *Harnish v. Herald–Mail Co.,* 264 Md. 326, 335–36, 286 A.2d 146, 152 (1972). *Cf. New York Times Co. v. Sullivan, supra; Jacron Sales Co. v. Sindorf,* 276 Md. 580, 597, 350 A.2d 688, 698 (1976). Malice in the *New York Times v. Sullivan* context is a subjective standard, focusing not on reasonableness, but on what a publisher actually knew. *Hohman v. A.S. Abell Co.,* 44 Md.App. 193, 407 A.2d 794 (1979).[12] The fatal flaw in Sib-

---

**10.** The district court did not refer to § 14–603 as being applicable, but this section also here extends qualified immunity to Pradhan.

**11.** *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

**12.** In *Hohman* the court stated:

"The New York Times or the so called 'constitutional malice' doctrine focuses primarily on the element of scienter. Knowing falsity or reckless disregard for truth involves proof of a 'high degree of awareness of ... probable falsity ...,' *Garrison v. Louisiana, supra* [379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)], such that the defendant 'entertained serious

ley's case is the lack of proof of the necessary mental element. Even when the evidence is viewed in the light most favorable to Sibley, it is clear he has failed to meet the required burden. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 244, 106 S.Ct. 2505, 2508, 91 L.Ed.2d 202 (1986) (*New York Times* requirement of clear and convincing evidence of malice must be considered on a motion for summary judgment).

The proof Sibley is prepared to offer of Pradhan's scienter is flimsy indeed. He notes inconsistencies: Pradhan's testimony that he advised Aybar of the two incidents which had been recounted to him, contrasted with Aybar's failure to remember; Pradhan's recollection that Agrawal reported one of the incidents, followed by Agrawal's subsequent denial. The essence of Sibley's theory, as found by the district court, was that:

> Such inconsistencies demonstrate that Pradhan, at the behest of Arrisueno, who disliked plaintiff, spearheaded the efforts against plaintiff in the credentials committee. Alternatively, plaintiff argues, Pradhan was reckless in his failure to check the veracity of what Arrisueno had told him in light of Arrisueno's reputation for being an unreliable source.

The court found Sibley failed to meet the evidentiary burden for either alternative.

The lack of substance is not remedied by the arguments advanced on appeal. In support thereof, Sibley has alleged Arrisueno's "dislike" and "vendetta" against Sibley, Arrisueno's nature as a "complainer," Pradhan's statement to a nurse at the hospital that it (presumably Sibley's rejection) "is all Arrisueno's fault," and Aybar's statement to Sibley that "the whole thing was spearheaded by Pradhan." Sibley's allegations, however, are too speculative to survive a summary judgment motion.

The district court held that there was no independent evidence of any conspiracy between Pradhan and Arrisueno to defame Sibley. The inconsistencies by themselves are insufficient to establish such agreement by inference. Sibley has argued that the existence of a conspiracy is irrelevant. What he ignores, however, is that, absent a conspiracy, Pradhan was acting independently, with no evidence of malice or bad faith, and related the *truth*—individuals reported to him the above incidents, information clearly germane to the decision before the credentials committee.

Even if Arrisueno had been engaged in an absolutely meritless, spiteful, vindictive vendetta against Sibley, leading him to misconstrue facts or report falsities to Pradhan, Arrisueno *was* the chief of the surgical intensive care unit. It would have been derelict if Pradhan had not conveyed the statements of such a personage to the Credentials Committee, unless he actually knew them to be false.

And, as the district court indicated, the Credentials Committee did not seem unduly swayed by Pradhan's reports. They awarded Sibley privileges in urology; they did not award emergency room privileges, which Sibley was unqualified for in the first place.[13]

doubts as to the truth of his publication.' *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). *Accord, Marchesi v. Franchino,* 283 Md. 131, 387 A.2d 1129 (1978)."

[*Delia v. Berkey,* 41 Md.App. 47, 53–53, 395 A.2d 1189, 1192 (1978)]. To prove "reckless disregard", as required by *New York Times v. Sullivan, supra,* appellant had to adduce sufficient evidence to permit the conclusion that appellee in fact entertained serious doubts as to the truth of the publication. *See St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed. 2d 262 (1968), where the Court stated:

"These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. *There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.*" [Emphasis added.]
44 Md.App. at 200–01, 407 A.2d at 798.

**13.** I disagree with the district court, however, in one respect. The Committee voted to revoke Sibley's temporary emergency room privileges, a position he was admittedly qualified for. Indeed, the only practical route under the Hospital bylaws for Sibley to attain the prerequisites for permanent emergency medical privileges was three years of emergency room experience.

Indeed, the issue of malice is the crux of Sibley's appeal. Almost all of his claims—defamation, negligence, tortious conduct, punitive damages—depend to some extent on Sibley's establishing some factual support for his allegations of malice on the part of Pradhan and the Hospital. There is clearly evidence upon which a jury could find the Hospital breached an implied contract based upon its bylaws. Sibley's application was delayed for an abnormal amount of time. He was rejected in an improper fashion. The hospital may have infringed his right to appeal within the hospital's procedure. To the extent of incorrectness those items, amounting to delay, rejection or infringement, at most constituted contractual inadequacy. Yet the evidence going to malice is too slight to amount to more than a scintilla. Arrisueno apparently disliked Sibley and often complained about him, but Arrisueno is not a party to the action. There are inconsistencies concerning the reporting of patient mishandling, but no evidence disputing that the incidents were reported in some fashion to Pradhan. *See Kapiloff v. Dunn,* 27 Md.App. 514, 540, 343 A.2d 251, 269 (1975), *cert. denied,* 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832 (1976) ("failure to investigate cannot satisfy the constitutional test of reckless disregard"). Conclusory statements that Sibley's opposition was "political", "all Arrisueno's fault," and "spearheaded by Pradhan," conceivably might be accurate, but the fact remains that Sibley was unqualified for full privileges in the emergency room and has introduced no actual evidence of malice on the part of Pradhan or the Hospital in implementing a decision mandated by the Hospital's own bylaws.[14]

Absent evidence demonstrating a factual basis for the requisite scienter, summary judgment for the defendants on the defamation counts was clearly appropriate. *See Happy 40, Inc. v. Miller,* 63 Md.App. 24, 37, 491 A.2d 1210, 1217 (1985), *cert. denied,* 304 Md. 299, 498 A.2d 1185 (1985) (absence of evidence of scienter fatal to defamation claim where statement conditionally privileged).

The district court held Sibley's claim for the negligent withholding and termination of hospital privileges was "clearly barred" by a provision in Sibley's application in which he agreed to:

> release from liability all representatives of the hospital and its medical staff for their acts performed in good faith and without malice in connection with evaluating my application and my credentials and qualifications.

Sibley claims the release is not an absolute bar. Instead, he asserts it is contractual in nature, losing its effect upon a showing of bad faith or malice.

Assuming we agree, unfortunately for Sibley, however, that does not change the practical consequence of the district court's holding. The release is still a *bar,* albeit a conditional one. As already indicated, Sibley has failed to demonstrate factual sup-

---

The inconsistency, however, does not affect the resolution of Sibley's claims.

**14.** The district court correctly noted:

While there is thus a dispute of fact as to whether the stories told by Pradhan played a role in the committee's decisions, this dispute is not a legally material one. It is not germane at all to the question of whether Pradhan's statements were made with malice. Likewise, it is not germane to plaintiff's claims based upon the hospital's violations of its bylaws since plaintiff has offered no evidence to show that the hospital's ultimate decisions would have been different even if what Pradhan reported to the committee had been proved untrue. The evidence that plaintiff offers could, at most, convince a reasonable jury that Pradhan's statements were one of several factors the committee considered in reaching its decisions. Plaintiff has introduced no evidence that could persuade a reasonable jury that his urology training met Lutheran's requirement of a "full program of training in surgery," and, hence, that a hearing would have resulted in a reversal of the committee's recommendation. It is virtually self-evident that plaintiff would never be able to produce evidence that a full hearing would have resulted in such a reversal, since it is highly unlikely that the hospital's board of directors would permit a physician to become a member of the emergency room staff after it had been brought to the attention of the board that he lacked one of the objective qualifications for the position set by the hospital's bylaws.

port for his allegations of bad faith and malice. Absent such a showing, the release remains an effective bar to any recovery.[15]

The defendants have argued that Sibley's negligence action must fail in any event, because, for negligence to lie, the hospital must owe Sibley a "duty," and such a duty does not exist. The defendants support their contention with a rather lengthy analysis, relying on the policy arguments in *Levin v. Sinai Hospital of Baltimore City*, 186 Md. 174, 46 A.2d 298 (1946) and the Maryland legislature's enactment of the aforementioned statutory immunity provisions.

The continued validity of the release would not permit us to reach that argument. It is provident to point out, however, that it is likely that a hospital does owe some duty of reasonableness to an applicant for a position or privileges. If hospital bylaws can be construed as an implied contract insofar as the manner for terminating staff privileges at a hospital is concerned, *Anne Arundel General Hospital v. O'Brien*, 49 Md.App. 362, 370, 432 A.2d 483, 488 (1981), then it is reasonable to assume that an action in tort could lie for acts arising out of the same circumstances. *See generally Jacques v. First National Bank*, 307 Md. 527, 515 A.2d 756 (1986) (discussing the relationship of tort and contractual duties).

Indeed, the very reason for having a conditional immunity statute is to protect individuals who, for public policy reasons, otherwise commit actionable torts. The emphasis is on *conditional.* Given the statutory language, it seems unbelievable that Maryland intended to eliminate all responsibility of a hospital to act reasonably towards those who apply for or are terminated from staff positions. Rather, it appears that Maryland, considering the legitimate social concerns attendant on such considerations, precludes liability only insofar as an individual's acts are performed in good faith and without malice. Since Sibley has not met the threshold burden of showing lack of good faith or malice, questions of duty are moot.

Sibley's other contentions are devoid of merit. Initially, the district court properly found Sibley's claim for intentional withholding and termination of hospital privileges "merely to be the assertion of a contract claim in the guise of a tort" and that, in any event, Sibley had failed to produce sufficient evidence of motive to withstand a summary judgment. The record fully justifies those conclusions. As shown, the evidence is insufficient to demonstrate factual support for the allegations of malicious intent on the part of Pradhan and the Hospital.

Sibley also contends that the district court erred in granting summary judgment in favor of Pradhan on the contract claim. Although the court did not specifically state the basis for its decision, Sibley reasons that the district court erroneously believed Pradhan was not an actor in the Hospital's violation of its bylaws. The defendants have argued that Pradhan should not be liable since he was not a party to the contract.

Pradhan was obviously an actor in the affair. He, as clearly, however, was not a party to an implied contract with Sibley formed by the hospital bylaws. Pradhan's role, if any, was defined as an agent of the hospital. Thus, under a contract analysis, Pradhan should not be personally liable for the breach of the implied contract between the hospital and Sibley. *See* Restatement (Second) of Agency § 328.[16]

---

**15.** Sibley has pointed to various violations of the hospital bylaws as indicative of bad faith and malicious intent. The incidents may be probative of a breach of contract; they do not amount to bad faith.

**16.** Furthermore, in the absence of proof of damage, Sibley's recovery on the contract claim is restricted to punitive damages. Punitive damages in Maryland, while they may be recovered in tort actions arising from a breach of contract, require actual malice or conduct so extreme that actual malice can be inferred. *H & R Block, Inc. v. Testerman*, 275 Md. 36, 46, 338 A.2d 48, 53–54 (1975). Sibley has failed to demonstrate any factual support for that conclusion. Consequently, an attempt to hold Pradhan liable for punitive damages would fail.

488

Finally, Sibley points to supposed error by the district court in granting summary judgment to both defendants on his claims for punitive damages arising out of the defendants' tortious breach of contract. While Maryland law does permit recovery of punitive damages upon proof of actual malice for a tort related to a contract claim, it does not permit recovery of punitive damages on the contract claim itself. *See H & R Block, Inc. v. Testerman*, 275 Md. 36, 46, 338 A.2d 48, 53–54 (1975). Sibley has failed to present sufficient factual support for his claims of malice on the part of Pradhan and the Hospital. He is thus precluded from punitive damages, even if he can establish tortious conduct arising from defendant's breach of contract, which is highly doubtful.

As Sibley is unable to demonstrate any grounds for reversal, the judgment of the district court should be affirmed.